United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAMOH T. TWEGBE ET AL.,<br><br>     Plaintiffs,<br><br>  v.<br><br>PHARMACA INTEGRATIVE PHARMACY, INC. ET AL.,<br><br>     Defendants. | No. CV 12-5080 CRB<br><br>**ORDER DENYING MOTION TO DENY CLASS CERTIFICATION** |

This is a wage and hour class action suit where Plaintiffs, seeking to represent a class of current and former pharmacy managers, allege that their employer Pharmaca misclassified them as "exempt" employees between 2008 and 2011, and failed to provide appropriate meal and rest breaks even after reclassifying them as "non-exempt" in 2011. Pharmaca now moves to deny class certification on the single ground that the proposed class of 37 pharmacy managers is not "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds this matter suitable for disposition without oral argument, see Civil L.R. 7-1(b), and DENIES Pharmaca's motion.

## I.     BACKGROUND

Plaintiffs are former pharmacy managers who worked at several of Pharmaca's fourteen California locations between 2007 and 2012. Compl. ¶¶ 1-5. Plaintiffs allege that they were misclassified as exempt employees between 2008 and June 2011, id. ¶¶ 11-16, and

1 that even after reclassifying them as non-exempt in June 2011, Pharmaca did not provide
2 them with the meal and rest breaks they were entitled to under California law, id. ¶ 18.

3     Plaintiffs filed suit in this Court in September 2012, bringing causes of action under
4 state law for failure to pay overtime wages owed, Cal. Lab. Code §510, failure to provide
5 proper meal and rest breaks, id. § 226.7, failure to timely pay wages owed at the time of
6 Plaintiffs' separations, id. §§ 201-203, failure to provide accurate pay stubs, id. § 206, and
7 unfair business practices, Cal. Bus. & Prof. Code § 17200 et seq. See Compl. ¶¶ 24-50.

8     They also sought under Federal Rule of Civil Procedure 23 to represent a class of
9 "employees holding the title of Pharmacy Managers who worked at Pharmaca pharmacies in
10 California between 2008 and the present," id. ¶ 20, and alternatively proposed dividing that
11 group into an overtime subclass, a meal break subclass, and a rest break subclass, id. ¶ 21.[1]
12 Plaintiffs alleged on information and belief that the class comprised "between 30 and 50
13 members." Id. ¶ 22(a).

14     Pharmaca has come forward with evidence, not disputed by Plaintiffs, that a total of
15 40 pharmacy managers worked in the class period proposed by Plaintiffs, and that 3 of those
16 managers have already entered into settlement agreements with Pharmaca voluntarily
17 releasing all claims against it. See Hoopes Decl. (dkt. 20-2) ¶¶ 3, 5. Thus, the proposed
18 class would have 37 members. Pharmaca now moves to deny class certification on the
19 ground that the proposed class is not "so numerous that joinder of all members is
20 impracticable." Fed. R. Civ. P. 23(a)(1).

21 **II.   DISCUSSION[2]**

22     Rule 23(c) provides that "at an early practicable time after a person sues . . . as a class
23 representative, the court must determine by order whether to certify the action as a class
24 action." Under that rule, "[a] defendant may move to deny class certification before a

---

[1] In their briefing on this motion, Plaintiffs specify that they seek to represent pharmacy managers who worked between the specific dates of September 30, 2008 and October 1, 2012. Opp'n at 5.

[2] Pharmaca argues that Plaintiffs waived their opposition by not submitting it by the deadline, but the Court accepts Plaintiffs' explanation regarding an outage in the Court's electronic filing system, and proceeds to the merits of the dispute.

2

plaintiff files a motion to certify a class." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009). District courts must conduct a "rigorous analysis" of whether the party seeking certification has satisfied Rule 23's prerequisites. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012).

Pharmaca moves to deny certification on the ground that Plaintiffs cannot meet their burden of showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). That provision is commonly referred to as the "numerosity" requirement, e.g., Gen. Tel. Co. of the Nw., Inc. v. EEOC, 446 U.S. 318, 330 (1980), even though the focus of the rule is less on the raw number and more on the impracticability of joinder, e.g., Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). The Supreme Court has explained that "the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co., 446 U.S. at 330.

Courts interpreting the numerosity requirement have identified a variety of factors relevant to whether joinder of all class members would be impracticable. Though different courts label and group the considerations differently, they include:

> (1) the number of individual class members;
> (2) the ease of identifying and contacting class members;
> (3) the geographical spread of class members; and
> (4) the ability and willingness of individual members to bring claims, as affected by their financial resources, the size of the claims, and their fear of retaliation in light of an ongoing relationship with the defendant.

E.g., Greko v. Diesel U.S.A., Inc., 277 F.R.D. 419, 425 (N.D. Cal. 2011); see also 7A Wright et al., Federal Practice & Procedure § 1762 (3d ed.); McLaughlin, McLaughlin on Class Actions § 4:6; Rubinstein et al., Newberg on Class Actions § 3:11. Where the decision is a close one and based on an incomplete record, a finding in favor of the impracticability of joinder can always be revisited in a future motion. See Fed. R. Civ. P. 23(c)(1); Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983).

**A.     The Number**

No hard and fast rules govern whether a particular number of class members inherently suggests impracticability of joinder. Other courts canvassing the precedent have

3

concluded that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members. Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549 (N.D. Cal. 2007). Exceptions to that rule abound. See Rubenstein et al., Newberg on Class Actions § 3:12 (collecting cases).

The parties here disagree at the outset as to the raw number of class members at issue. Pharmaca argues that the real number of class members is 26, because Plaintiffs' claims logically break down into one class of managers who worked between 2008 and June 2011 while classified as "non-exempt," and a second class of managers who worked after June 2011 while classified as "exempt" and who did not receive proper meal and rest breaks. By Pharmaca's count, each of those classes contains only 26 members.

As a threshold matter, both of the proposed numbers (26 and 37) fall within the gray area where the raw number itself is not dispositive, so the point is largely academic. To the extent it is relevant, the difference between the two definitions turns on whether the meal and rest break violations were a function of the alleged misclassification or some other policy, and Plaintiffs say they are contending the latter. Under that theory, Plaintiffs' claims logically break down into one 37-member class of managers who were denied proper meal and rest breaks on account of company policies independent of their classification as exempt or non-exempt, and a second class of 26 managers in that group who were denied overtime pay due to misclassification between 2008 and 2011.

Pharmaca complains that Plaintiffs are shifting their theory of liability from what is alleged in their Complaint in an act of "gamesmanship." The theory, however, is consistent with Plaintiffs' allegation in the Complaint that meal and rest break violations continued even after reclassification, Compl. ¶ 18, and so the Court concludes that Plaintiffs have proposed a class comprising 37 members.

One action presents a variety of efficiencies over the potential for dozens of separate lawsuits. See Califano v. Yamasaki, 442 U.S. 682, 701 (1979). Pharmaca points out that the degree of efficiency turns on whether and how much the separate claims actually overlap, but

1 Rule 23 addresses those concerns separately with its commonality and predominance
2 requirements, and Pharmaca remains free to argue those points in a future motion.

3     In sum, the raw number of 37 class members is quite close to the threshold some
4 courts have adopted for presumptive impracticability, and litigating all thirty-seven claims in
5 a single suit presents significant potential savings in resources for both the courts and the
6 parties. This factor weighs in favor of a finding that joinder is impracticable.

### B.     Identification of Class Members

8     When the identities, names, and locations of class members are knowable and known,
9 joinder of those members is more practicable. E.g., Trevizo v. Adams, 455 F.3d 1155, 1162
10 (10th Cir. 2006). Plaintiffs have contact information for 14 of the 37 class members already,
11 see Hong Decl. Ex. B at 4, and they did not explicitly respond to Pharmaca's suggestion that
12 because Plaintiffs also have the business contact information for all currently employed
13 managers, they perhaps have the ability to identify and contact upwards of 25 to 30 putative
14 class members. But Plaintiffs may or may not be able to identify the remaining individuals,
15 and Pharmaca has so far refused to produce that information in discovery.

16     Pharmaca says that this factor weighs strongly in its favor, but in the cases that found
17 this factor a compelling reason to deny certification, Plaintiffs already had contact
18 information for all of the putative class members. E.g., Ass'n Cas. Ins. Co. v. Allstate Ins.
19 Co., No. 07CV525KS-JCS, 2008 WL 2954977, at *6 (S.D. Miss. July 29, 2008); Baroni v.
20 Bell South Telecomms., Inc., No. Civ.A.09-009, 2004 WL 1687434, at *4 (E.D. La. July 27,
21 2004); see also Fed. R. Civ. P. 23(a)(1) ("the class is so numerous that joinder of all members
22 is impracticable") (emphasis added). That Plaintiffs certainly can contact 14 (or 25-30 under
23 Pharmaca's theory) of the putative class members does not imply that joinder of all 37 is
24 practicable.

25     Pharmaca says that the Court should treat Plaintiffs as though they have access to all
26 of the contact information because even if they do not have it now, they could obtain it
27 through discovery. Mot at 13. But the only obvious reason Plaintiffs would be entitled to
28 other class members' contact information during discovery would be to pursue their class

5

1  claims, and if the Court accepts Pharmaca's argument and denies certification on numerosity
2  grounds, the Court would be denying them certification on the grounds that they have access
3  to information that the denial order would in fact prevent them from obtaining.

4  Plaintiffs also argue that injunctive relief for the class would affect future employees
5  of Pharmaca, and so the class of potentially affected individuals is larger than it appears and
6  includes individuals who are not presently known or identifiable. See, e.g., Jack v. Am.
7  Linen Supply Co., 498 F.2d 122, 124 (5th Cir. 1974). But Plaintiffs are all former employees
8  of Pharmaca, and so they lack standing to pursue injunctive relief on behalf of current and
9  future employees. See Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

10 This factor cuts in both directions. The class itself is definite and its members are
11 identifiable; indeed, their names and contact information have already been collected in a
12 spreadsheet. But that spreadsheet sits on Pharmaca's computers, and Pharmaca refuses to
13 share it without being ordered to do so. Plaintiffs have managed to uncover the details on
14 somewhere between 14 and 30 of the class members, and the Court can only speculate about
15 the likelihood that they will ferret out the remaining information. Because it is not clear that
16 Plaintiffs would actually be able to contact all class members to pursue joinder, this factor
17 weighs slightly in favor of the conclusion that joinder would be impracticable.

18 **C.     Location of Class Members**

19 Even a relatively small group of people may be difficult to join if they are spread out
20 far enough. E.g., In re Beer Distribution Antitrust Litig., 188 F.R.D. 557, 562 (N.D. Cal.
21 1999). At the extremes, this factor is easily applied: joinder of class members sprinkled
22 around the country is less practicable, e.g., id., while joinder of class members who all reside
23 in the same district is more practicable.

24 This case, however, (once again) falls in the uncertain middle of the continuum.
25 Pharmaca's spreadsheet containing the company's last known contact information for the
26 putative class indicates that all but one of its members live in California, with about 70% (26
27 of 37) of the people residing or currently working in the Northern District of California. See
28 Hoopes Decl. Ex. A. The out-of-state class member lives in New York, and the other class

6

1 members are spread out around California. Id.  Pharmaca's records, however, are not up to
2 date; for former employees, Pharmaca's spreadsheet only has the employees' addresses at the
3 time of their separations, which the company made no efforts to update.  See Hoopes Depo.,
4 Ex. 1 to Zurada Decl. (dkt. 22) at 20-22.  Thus, it is a fair inference that some of the address
5 information is stale.

6 Courts confronting similar situations have reached different conclusions.  Compare
7 Greko, 277 F.R.D. at 425 ("[T]he class members are geographically dispersed throughout
8 California, which favors class treatment."), with Hurley v. U.S. Healthworks Medical Grp. of
9 Wash., P.S., No. 05-017-EFS, 2006 WL 1788994, at *7 (E.D. Wash. June 27, 2006) (fifty
10 class members spread out across Washington and Idaho not impracticable to join).

11 In sum, nearly all of the putative class members live in the same state, and most of
12 them work or reside within this District.  But California is a big state, at least one–and
13 possible more, given the stale nature of the data–class member lives across the country, and
14 Rule 23(a)(1) speaks in terms of the joinder of "all" class members, not most of them.  In the
15 run of cases, the putative class here is probably slightly more geographically concentrated
16 than those where courts relied heavily on geographical dispersion to support a finding of
17 numerosity, but this factor still weighs slightly in favor of Plaintiffs' position that joinder
18 would be impracticable.

19 **D.     Ability and Willingness to Sue**

20 Another set of considerations affecting the practicability of joinder concerns putative
21 class members' ability and willingness to bring individual actions.  First, the size of the
22 individual claims matters, because "small recoveries do not provide the incentive for any
23 individual to bring a solo action prosecuting his or her rights."  Amchem Prods. Inc. v.
24 Windsor, 521 U.S. 591, 617 (1997).  Under the same logic, courts are more likely to find
25 joinder practicable where individual recoveries are substantial.  See, e.g., Deen v. New Sch.
26 Univ., No. 05-7174(KMW), 2008 WL 331366, at *4 (S.D.N.Y. Feb. 4, 2008) (potential
27 recovery of $60,000 per individual weighed against finding joinder impracticable).
28

7

Pharmaca says that the potential recoveries here are substantial, as illustrated by the three named plaintiffs' minimum potential recoveries of $38,000, $47,000, and $59,000. Plaintiffs do not dispute Pharmaca's math, nor do they dispute Pharmaca's point that those numbers do not account for penalties, premiums, and attorneys' fees, which could drive individual recoveries into the six-figure range. Accordingly, the potential recoveries at issue here provide real incentives to institute individual actions.

The social and financial characteristics of putative class members can also make a difference. Where, for example, the class members are relatively poor, have little formal education, and do not speak English, they are less likely to bring suit than their wealthier, well-educated counterparts, making joinder less practicable. See, e.g., Kazarov v. Achim, No. 02-5097, 2003 WL 22956006, at *4 (N.D. Ill. Dec. 12, 2003). The putative class members here are management-level employees with clinical degrees and significant financial resources. Each manager earned between $57 and $68.50 an hour, which works out to about $114,000 to $137,000 per year. Accordingly, they almost certainly have the means to bring individual suits; indeed, six already have.

Plaintiffs do not dispute that the putative class members' financial incentives and resources are substantial; rather, they argue that class members stand to lose much more money, and suffer a variety of other unpleasant outcomes, given the possibility of employer retaliation. In considering the practicability of joinder, many courts have given substantial weight to employees' reluctance to sue their employers–even without case-specific evidence that a fear of reprisal was reasonable or genuine. See Greko, 277 F.R.D. at 425; Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625 (5th Cir. 1999); O'Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 351 (N.D. Ill. 2011). Though the logic is somewhat stronger as it relates to current employees, former workers who value a good reference from the company might also shy away from suit. Greko, 277 F.R.D. at 425.

Other courts have declined to presume unlawful retaliation on the part of an employer, and have discounted this argument where plaintiffs lacked evidence that employees were actually afraid or had a reason to suspect reprisal was likely. See Hurley, 2006 WL 1788994,

at *7; Pruitt v. City of Chi., Dep't of Aviation, No. 03C2877, 2004 WL 1146110, at *8 (N.D. Ill. May 20, 2004); Humphrey v. Int'l Paper, No. 02C4147, 2003 WL 22111093, at *15 (N.D. Ill. Sept. 11, 2003). Pharmaca also cites to one district court that concluded that fear of reprisal was less likely to inhibit managerial employees occupying positions of authority. Sanft v. Winnebago Indus. ,Inc., 216 F.R.D. 453, 459-60 (N.D. Iowa 2003).

Whether or not an employer has actually threatened to retaliate, a class member presented with the opportunity to sue the company signing her paychecks would be reasonable to worry that the adversarial postures adopted in the lawsuit would spill over to the workplace. And this Court sees no reason why a manager with her own supervisors would be insulated from such concerns. Accordingly, the Court concludes that notwithstanding class members' financial incentives and resources to institute suit, the potential for employer retaliation presents a daunting obstacle that favors the conclusion that joinder of all class members would be impracticable.

## IV. CONCLUSION

Though some of the individual factors are close calls, the Court concludes that at this time all of the relevant considerations counsel in favor of the conclusion that joinder of all class members would be impracticable, and DENIES Pharmaca's motion to deny class certification.[3]

**IT IS SO ORDERED.**

Dated: July 17, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] The parties agreed to limit the scope of this motion to Rule 23(a)(1)'s numerosity requirement, and this Order does not consider or address whether Plaintiffs would be able to satisfy Rule 23's remaining requirements. Both parties remain free to litigate those issues in future motions.